UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 19-11-DLB-CJS

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                           **REPORT AND RECOMMENDATION**

ERIC CAIN                                                            DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Eric Cain moves to suppress evidence that he argues was obtained from "an unconstitutional stop and arrest." (R. 59, Page ID 139; *see* R. 92). An evidentiary hearing was held on the Motion on March 10, 2020. (R. 89). Cain did not testify at that hearing. The parties filed simultaneous post-hearing briefs. (R. 91; R. 92). The motion is now ripe for consideration and preparation of a Report and Recommendation.[1] *See* 28 U.S.C. § 636(b)(1)(B). For the reasons below, it will be recommended that Cain's motion to suppress be denied.

**I.    BACKGROUND**

Cain has been indicted on the following six counts: conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § 846 (Count 1); distribution or possession with intent to distribute methamphetamine, heroin, and fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Counts 2-5); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 6). (R. 1). These counts arose from a December 4, 2018 traffic stop of Cain's vehicle and his subsequent arrest. (*See* R. 1; R. 59). In his motion to

---

[1] *See United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) (citing *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (characterizing a motion to suppress as dispositive)).

suppress, Cain argues that officers did not have a valid basis to stop his vehicle and, even if they did, they unconstitutionally prolonged his seizure. (R. 59, Page ID 141-43). The Government argues that officers had probable cause to stop his vehicle and a valid basis to continue his seizure. (R. 65).

## II.  FACTUAL FINDINGS

Before his December 4, 2018 arrest, Cain was the target of a drug investigation. (*See* Suppression Hearing Transcript - R. 89, Page ID 237-39). Detective Ben Kolkmeier, assigned to the undercover drug unit with the Florence Police Department, was "put into contact with a subject who [was] charged with criminal offenses, who agreed to work as a confidential informant." (*Id.* at Page ID 238). This confidential informant stated that, over approximately a one-year period, she had bought about seven ounces of methamphetamine from a person she knew as "Cain." (*Id.*). After being shown a driver's license photo of Cain, she identified him as the person she had "purchased methamphetamine from in the past." (*Id.* at Page ID 238-39).

On November 27, 2018, law enforcement was speaking with the confidential informant when she received a phone call; she stated it was from Cain. (*Id.* at Page ID 239). Cain asked "her what [she] thought about mixing methamphetamine with what he called pepto," "pepto" meaning heroin. (*Id.*). On December 4, 2018, law enforcement instructed the confidential informant "to order up two ounces of methamphetamine along with . . . a tester of the pepto," which was a small amount of heroin. (*Id.* at Page ID 240). Primarily through text messaging, the confidential informant set up a drug transaction with Cain to purchase two ounces of methamphetamine for $1100 and a small tester of pepto for $40 at an Allstate Collision Center in Florence, Kentucky. (*Id.* at Page ID 240-43).

2

Law enforcement prepared for the controlled buy by placing "several unmarked cars in the area," fitting the confidential informant with audio surveillance equipment, and monitoring a GPS tracker that had previously been installed on Cain's vehicle under a warrant. (*Id.* at Page ID 243-45, 258).

Detective Kolkmeier was not in a position to observe the drug deal (*id.* at Page ID 256), but Matthew Day, a task officer with the DEA assisting in the investigation, was able to see the transaction (*id.* at Page ID 260-61). He saw a black Dodge Challenger with tinted windows pull into the parking lot. (*Id.* at Page ID 262-63). Cain, the driver, greeted the confidential informant, and they walked to the back of the vehicle. (*Id.* at Page ID 263). Cain reached into the back seat and grabbed something. (*Id.*). The entire encounter between Cain and the confidential informant lasted "[m]aybe two minutes," with Cain returning to his vehicle and leaving, and the confidential informant walking back to nearby officers. (*Id.* at 263-64).

According to Detective Kolkmeier, the confidential informant walked back to his vehicle and turned over drugs that she had bought. (*Id.* at Page ID 245). "[S]he stated that she saw a large amount of other drugs still in the vehicle after she had done her buy" (*id.* at Page ID 246) and "she confirmed it was Mr. Cain that she did the transaction with" (*id.* at Page ID 259-60). When Cain left the parking lot, it was about 6:39 p.m. (*id.* at Page ID 246) and it was dark (*id.* at Page ID 255). Officer Day called Boone County Sheriff's Deputy Ryan King, asking him "to try to get the vehicle stopped" and advising them that "Mr. Cain's vehicle had just left a controlled buy and that they would need to find their own probable cause."[2] (*Id.* at Page ID 265, 278). He continued to monitor

---

[2] Question: "So you told them, in essence, that you had just bought drugs from Mr. Cain?" Answer: "Yes, sir." (Day Testimony – *Id.* at Page ID 266).

3

Cain's vehicle location through GPS. (*Id.* at Page ID 266). He observed the vehicle stop at Country Place Apartments; "It was not there long."[3] (*Id.* at Page ID 265).

Deputy King testified that he was partnered with Sergeant Jason Hurst when he received the call from Officer Day. (*Id.* at Page ID 282-83). Officer Day "advised that it was a Charger or Challenger vehicle and it just came from, I believe, a controlled buy somewhere, and they were tracking it back via the GPS and giving us directions where it was headed." (*Id.* at Page ID 283). Deputy King and Sergeant Hurst used the updates about the vehicle's location to position their "vehicle in the center median on [Kentucky Route] 237 between Kentucky 20." (*Id.* at Page ID 283-84). Deputy King stated that they "saw the vehicle pull past Country Place to the gas station, the BP there, and pull to the light" that was "at Barbara [Drive] and 237." (*Id.* at Page ID 284). "We observed the vehicle pull to the light. As the vehicle made a left-hand turn, we did not notice any front indication light [i.e., turn signal]. As the vehicle made a left turn to go on to north 237 from Barbara, we did not see any rear indicating light . . ." (*Id.*). They performed a traffic stop "right before Medical Arts northbound, right before you get on to [Interstate] 275." (*Id.* at Page ID 285).

Deputy King approached on the passenger side and Sergeant Hurst approached on the driver side. (*Id.*). Sergeant Hurst asked Cain for his driver's license and insurance card, but Cain did not produce a valid insurance card, although Sergeant Hurst did not "remember if it was expired or he just didn't produce one." (*Id.* at Page ID 313). About this time, Deputy King advised that he saw "a firearm in the passenger seat of the vehicle." (*Id.* at Page ID 285-86, 313). Sergeant Hurst asked if he could remove the firearm, Cain agreed, and Deputy King removed the firearm. (*Id.* at Page ID 286, 313). Deputy King "placed the firearm at the rear of the trunk of the vehicle

---

[3] "I'd hate to put a number on it, but it was minutes." (Day Testimony – *Id.* at Page ID 265).

4

and then walked back up to the passenger side of the vehicle." (*Id.* at Page ID 287). He testified that he "smelled the odor of [burnt] marijuana coming from the inside of the vehicle." (*Id.* at Page ID 287, 301). He asked "Mr. Cain to exit the vehicle, go towards the rear of the vehicle, between his vehicle and our cruiser." (*Id.* at Page ID 287).[4] Cain complied. (*Id.*).

Sergeant Hurst ran "the serial number of the firearm through dispatch." (*Id.* at Page ID 314; *see also id.* at Page ID 287). "The firearm came back as stolen." (*Id.* at Page ID 288). Deputy King handcuffed Cain and read him his *Miranda*[5] rights. (*Id.* at Page ID 288-89). Cain was asked "if there was anything illegal in the vehicle." (*Id.* at Page ID 315). Cain said "there was a box in the vehicle that could contain some type of narcotics." (*Id.*). When "questioned why he did not turn it into the authorities[,] [Cain] made a statement that he was going to try to sell what was in the contents of the box for Christmas money." (*Id.*).

Sergeant Hurst had requested a drug dog. (*Id.* at Page ID 315-16). Deputy David Hehman arrived on the scene with his K-9 partner, Mike. (*Id.* at Page ID 334). Mike "performed a free air sniff of the vehicle" and alerted to the presence of narcotics. (*Id.* at Page ID 336). After searching the vehicle, officers uncovered drugs and $1170 in cash. (*Id.* at Page ID 317, 329, 344, 345, 347). Additionally, Sergeant Hurst testified that he saw what he believed were small bits of marijuana "shake" on the passenger side of the vehicle. (*Id.* at Page ID 288, 301, 332).

### III.  ANALYSIS

The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures. U.S. Const. amend. IV. This prohibition against

---

[4] Deputy King's testimony indicates that Cain was asked to exit the vehicle after he smelled marijuana but before the firearm came back as stolen. (*Id.* at Page ID 287). Sergeant Hurst's testimony indicates that Cain was asked to leave the vehicle after the gun was reported stolen. (*Id.* at Page ID 315). To the extent there is an inconsistency, the Court finds that it is not material.

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

unreasonable searches and seizures "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Chandler,* 437 F. App'x 420, 425 (6th Cir. 2011) (quoting *United States v. Luqman,* 522 F.3d 613, 616 (6th Cir. 2008)). Consistent with the Fourth Amendment, a police officer may initiate a traffic stop if the officer "possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012); *see United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) ("This circuit has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation."); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment."). Evidence seized during an illegal traffic stop may be subject to suppression. *Blair*, 524 F.3d at 748.

In considering the motion to suppress, Cain generally bears the burden of establishing that his Fourth Amendment rights were violated. *See United States v. Coleman,* 923 F.3d 450, 455 (6th Cir.), *cert. denied*, 140 S. Ct. 580 (2019) ("As the proponent of the motion to suppress, Coleman 'bears the burden of establishing that the challenged search violated his Fourth Amendment rights.'") (quoting *United States v. Witherspoon,* 467 F. App'x 486, 490 (6th Cir. 2012)). While Cain must show that his Fourth Amendment rights were violated, the government bears the burden of demonstrating by a preponderance of the evidence that the stop was proper. *United States v. Wells,* 690 F. App'x 338, 342 (6th Cir. 2017) ("It was the government's burden to justify the traffic stop."). To meet its burden, the United States offers two reasons to justify the stop of Cain's vehicle: (1) "investigators had probable cause to stop and search the vehicle even

before observing the traffic violation due to information from a controlled buy"; and (2) "The patrol officers also had sufficient probable cause to justify the traffic stop based on an observed traffic violation." (R. 91, Page ID 370).  The Court considers both arguments.

### A. The Controlled Buy Provided Probable Cause to Stop and Search Cain's Vehicle

Sergeant Hurst and Deputy King had probable cause to stop Cain's vehicle because the circumstances surrounding the controlled buy established "a reasonable person's belief that an offense has been or [was] being committed." *United States v. Randall*, 62 F. App'x 96, 100 (6th Cir. 2003).[6]  Law enforcement had monitored communications between Cain and a confidential informant, whom he had reportedly sold drugs to in the past. (*See* Government Exhibit 1).  They set up a controlled buy—two ounces of methamphetamine for $1100 and a small tester of pepto for $40. (R. 89, Page ID 242).  Cain showed up at the designated meeting location and was observed removing something from his vehicle and speaking with the confidential informant at the back of his vehicle for about two minutes. (*Id.* at Page ID 263-64).  According to the testimony at the suppression hearing, this was an exchange of drugs for money. (*See id.*).  Additionally, the confidential informant observed more drugs in the vehicle. (*Id.* at Page ID 264).  After observing these activities, "officers had little reason to think that they would not find contraband in that vehicle." *United States v. Welch*, 279 F. App'x 376, 378 (6th Cir. 2008); *see United States v. Arnold*, 442 F. App'x 207, 210-11 (6th Cir. 2011) ("The police could point to a variety of specific facts to establish a fair probability that Arnold's trunk contained contraband: the confidential informant's tips and corroboration thereof, the observation of people surrounding Arnold's open

---

[6] Because "probable cause existed at the time of the initial stop, . . . reasonable suspicion analysis is unnecessary." *United States v. Arnold*, 442 F. App'x 207, 210 (6th Cir. 2011).  However, reasonable suspicion that Cain committed a crime, "a less demanding standard than probable cause," also existed. *Alabama v. White*, 496 U.S. 325, 330 (1990).

trunk, the informant's arrangement of a controlled buy over the phone, and Arnold's drive to the proposed drug deal location.").

Based on this same information, there was "a fair probability that contraband or evidence of a crime [would] be found" in Cain's vehicle. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). And under the automobile exception, police are entitled to search "every part of the vehicle and all containers found therein in which contraband could be hidden." *Arnold*, 442 F. App'x at 211 (quoting *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991)). Accordingly, "because police had probable cause at the time of the initial stop, the entire stop and search of [Cain's vehicle] was constitutionally permissible under the automobile exception." *Arnold*, 442 F. App'x at 211.

Cain disagrees. First, he argues that "this Court should limit itself to the actual reason for the stop as explained by the officers [the traffic violation] and the prior actions of Cain have no relevance in this decision." (R. 92, Page ID 382; *see* R. 89, Page ID 297). However, it is well established that "the permissibility of a traffic stop turns not on subjective intent, but rather on objective fact." *United States v. Hughes*, 606 F.3d 311, 315 (6th Cir. 2010). Accordingly, it does not matter if Sergeant Hurst and Deputy King testified that their subjective intention for the stop was Cain's failure to use his left turn signal, even if their true purpose was to investigate a drug crime, as long as they possessed the necessary facts establishing probable cause to believe that Cain had committed a drug crime. *Id.* ("[I]f, at the time of the stop, Atnip had probable cause to believe that Hughes was violating one of the traffic ordinances or statutes raised by the government before the district court, then it simply does not matter whether Atnip intended to stop Hughes on the basis of that traffic violation or instead intended to stop Hughes because Atnip suspected that Hughes was preparing to commit a crime."); *see Devenpeck v. Alford*, 543 U.S. 146, 154-55 (2004)

("Subjective intent of the arresting officer, however it is determined (and of course subjective intent is always determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest."); *Ferguson*, 8 F.3d at 391 (6th Cir. 1993) ("We focus not on whether a reasonable officer 'would' have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer 'could' have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop.").

To this point, Cain argues that "[t]he citation mentions nothing about prior communication with the officers involved with the alleged drug transaction. Consequently, the collective knowledge element does not support the stop." (R. 59, Page ID 142). Put simply, he argues that Sergeant Hurst and Deputy King did not possess knowledge of the facts of the controlled buy to established probable cause for the stop and search. However, at the suppression hearing, testimony established that Officer Day communicated the observance of a controlled buy involving Cain and details for identifying his vehicle *before* Sergeant Hurst and Deputy King stopped him. (R. 89, Page ID 266, 279, 280, 283, 310). The collective knowledge doctrine permits a court "to impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012); *see United States v. Hensley*, 469 U.S. 221, 231 (1985) ("[W]hen evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest.").

9

Accordingly, Sergeant Hurst and Deputy King were entitled to rely upon Officer Day's more complete knowledge of the specific facts supporting the stop and search under the collective knowledge doctrine.

Lastly, Cain argues that "the officers would not have been able to see a license plate confirming the vehicle nor would they have been able to identify the Defendant until the stop occurred." (R. 59, Page ID 140). The Court understands this as an argument that Sergeant Hurst and Deputy King did not have probable cause to stop his specific vehicle, meaning, they did not know that his black Dodge Challenger was the particular one that had left a controlled buy. This too fails. At the suppression hearing, Sergeant Hurst testified that he had the license plate number before stopping the vehicle and confirmed it with dispatch before even activating his lights to stop Cain. (R. 89, Page ID 310, 331). Moreover, Sergeant Hurst and Deputy King also had a description of the vehicle and were receiving contemporaneous reports on its location from Officer Day, which is what allowed them to locate the vehicle in the first place.

> **B.  Cain's Failure to Use his Left-Turn Signal Provided Probable Cause to Stop his Vehicle and Probable Cause Existed to Search the Vehicle**

Alternatively, assuming that the controlled buy did not establish probable cause to stop Cain's vehicle, Cain's failure to use his left-turn signal did. Kentucky law "require[s] a turn signal be provided upon a vehicle moving right or left upon a roadway." *United States v. Matthews*, 422 F. Supp. 3d 1235, 1249 (W.D. Ky. 2019) (quoting Ky. Rev. Stat. § 189.380(1)-(2)). And "[a] driver's failure to use a turn signal provides probable cause to justify a traffic stop irrespective of the officer's subjective intent." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).

Once Cain was stopped, "the smell of marijuana in [his] automobile [could] by itself establish probable cause for a search," *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002), or at the very least, "the smell of marijuana emanating from [Cain's] vehicle constituted a change

10

of circumstances that suggested [Cain] was engaged in illegal activity, which authorized further detention so the officers could investigate," *United States v. Noble*, 364 F. App'x 961, 964 (6th Cir. 2010). *See United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (collecting cases noting that smell of marijuana is sufficient to establish probable cause to search vehicle). Likewise, the report of the stolen firearm would have been reason to further detain Cain. *See United States v. Southern*, 238 F.3d 425 (6th Cir. 2000) ("After they attempted to verify ownership of the guns via telephone, they learned that three of them had been reported stolen, thereby giving rise to probable cause for the police to believe that Southern was engaged in some criminal enterprise (or at the very least that he was in possession of stolen firearms)."). From that point, if probable cause to search the vehicle had not yet been established, there was certainly "a fair probability that contraband or evidence of a crime [would] be found" after Cain *admitted* [7] that he had drugs in the vehicle that he intended to sell for Christmas money. *Sokolow*, 490 U.S. at 7 (quoting *Gates*, 462 U.S. at 238).

Again, Cain disagrees. First, he argues that there was inconsistency between Sergeant Hurst and Deputy King's testimony about the distance they were from his vehicle when they observed his failure to use a turn signal and he asserts that no traffic violation was committed. (R. 92, Page ID 379, 381). Cain misreads the record.

Contrary to Cain's assertions, Deputy King did not testify "that they were a distance of a little less than a football field away." (R. 92, Page ID 381). Rather, when asked whether the distance from Cain's vehicle would "be a football field" away, Deputy King stated, "It would probably be shorter than a football field, sir." (R. 89, Page ID 295). Moreover, he indicated that

---

[7] "He said he believes there was narcotics in the box, and he had found it close to his residence and was going to sell them for -- to make extra money for Christmas." (Deputy King Testimony - R. 89, Page ID 290).

11

he was "closer towards the middle, upper towards - - closer towards Barbara," which is consistent with Sergeant Hurst's testimony they were "near the stop bar" in relation to the median of the intersection. (*Id.* at Page ID 293, 324).[8] The Court finds no material inconsistency in the officers' testimony nor any inherent incredibility in their testimony that they could see Cain's turn signal (or lack thereof) from their vantage point.[9]

Next, Cain challenges whether Deputy King smelled marijuana, arguing that Cain was not charged with possession, there were no field sobriety tests, Hurst did not smell marijuana, and "[t]he controverted smell of marijuana should not extend the stop beyond the scope unless the officer believes, by reasonable and articulable suspicion, the subject is under the influence." (R. 379, 380). However, none of these arguments is convincing. The Government has broad discretion in deciding which charges to bring. *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013). The Government may, in this case, have brought only the charges that it believes are the easiest to prove. Similarly, the failure to conduct a field sobriety test does not necessitate the conclusion that Deputy King falsely testified about smelling marijuana. He might have believed such unnecessary as he testified that he did not think Cain was under the influence of anything. He could still investigate Cain for possession of marijuana even if he did not think him under the influence of the drug. (R. 89, Page ID 301). Further, although Hurst did not smell marijuana, that is not particularly troublesome given that Deputy King smelled marijuana on the passenger side of

---

[8] Sergeant Hurst and Deputy King were each asked to indicate their position on a map (Defense Exhibit 2) at the suppression hearing. (R. 89, Page ID 292-93, 324). They indicated different but relatively close positions.

[9] Along this same line of attack, Cain takes issue with the fact that Deputy King could not see the license plate, driver, or passenger from his vantage point but could see that no left-turn signal was illuminated. (R. 92, Page 379). However, one would expect numbers on a license plate or occupants of a vehicle with tinted windows to be more difficult to see at night than an illuminated turn signal.

the vehicle while Sergeant Hurst approached from the driver's side. (*Id.* at Page ID 328, 332).[10] Cain cites no authority, nor can this Court find any, stating that when the odor of marijuana is detected upon traffic stop, a person may be detained only if there is a belief that the person is under the influence. *See United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) ("But drugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present. For purposes of this warrant, therefore, it did not matter whether the police suspected that Church possessed marijuana, dealt marijuana, or committed some other crime. What mattered was that there was a 'fair probability' that marijuana was in the house.").

Lastly, Cain generally argues that the Sergeant Hurst and Deputy King impermissibly exceeded the time necessary to handle the traffic stop in violation of *Rodriguez v. United States*, 575 U.S. 348, 350 (2015).[11] (R. 92, Page ID 380). However, as the Supreme Court noted in *Rodriguez*, a stop can be extended based upon "reasonable suspicion" of criminal activity, which the smell of marijuana and notice of stolen firearm provided here. *Rodriguez*, 575 U.S. at 355.

## IV. CONCLUSION AND RECOMMENDATION

The evidence and testimony presented at the evidentiary hearing, as well as the evidence set forth in the record, demonstrate that Cain's constitutional rights were not violated such that suppression is warranted.

Accordingly, for the reasons stated, **IT IS RECOMMENDED** that Cain's Motion to Suppress (R. 59) be **denied.**

---

[10] Moreover, as noted, Sergeant Hurst testified that he observed what he believed were small bits of marijuana on the passenger side of the vehicle. (R. 89, Page ID 332).

[11] Cain briefly argues that the drug dog's sniff of the vehicle should not be relevant to the Court's analysis. (R. 92, Page ID 382). Because ample probable cause existed to search Cain's vehicle absent the sniff, the Court need not address the issue.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 14th day May, 2020.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\criminal cov\2019\19-11-DLB-CJS R&R re mtn to suppress.docx