UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL ACTION NO. 19-11-DLB-CJS**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**V.**         **ORDER ADOPTING REPORT AND RECOMMENDATION**

**ERIC CAIN**                                                                **DEFENDANT**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

This matter is before the Court upon Magistrate Judge Candace J. Smith's Report and Recommendation ("R&R") (Doc. # 95), wherein she recommends that Defendant Eric Cain's Motion to Suppress (Doc. # 59) be denied. Defendant having filed Objections (Doc. # 96) to the R&R, and the Government having responded to Defendant's Objections, (Doc. # 98), the R&R is now ripe for the Court's review. For the reasons set forth herein, Defendant's Objections are **overruled**, the R&R is **adopted**, and the Motion to Suppress is **denied**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 4, 2018, Defendant Cain was arrested in Boone County, Kentucky following a vehicle stop. (Doc. # 95 at 1). Prior to this incident, Cain was being investigated by the Florence Police Department, as a confidential informant had told officers that over the course of a year, she had purchased approximately seven ounces of methamphetamine from someone named "Cain." *Id.* at 2. After Defendant Cain reached out to the confidential informant via phone, the informant, at the direction of law enforcement, arranged for a drug purchase between herself and Cain, in which she would

1

purchase two ounces of methamphetamine and a small amount of heroin. *Id.* The transaction was scheduled to occur in Florence, Kentucky in an Allstate Collision Center parking lot with law enforcement in unmarked vehicles. *Id.* at 2–3.

As the transaction took place, Matthew Day, a Drug Enforcement Agency task force officer, observed from a nearby area. (Doc. # 95 at 3). Day had previously placed a GPS device on Cain's car in the parking lot of Cain's place of employment, and then Day had been monitoring the tracking device closely to see Cain's movements "pretty close to real time." (Doc. # 89 at 32:9–33:10). Day observed Cain's vehicle—a Dodge Challenger—in the tracker monitoring application, and then physically witnessed Cain pull into the parking lot in the Challenger. *Id.* at 34:2–9. Over the course of about two minutes, Day observed Cain and the informant greet each other, and then Cain walked around to meet with the informant at the back of the vehicle, at which point Cain grabbed something from the backseat of his vehicle. (Doc. # 95 at 3). Cain returned to his vehicle and left. *Id.*

The confidential informant walked back to the vehicle of a Florence Police Department detective, Ben Kolkmeier, who had been assigned to the undercover drug unit investigating Cain. (Doc. # 95 at 2–3). Kolkmeier testified that the informant turned over to him the purchased drugs, but she stated that there remained a "large amount of drugs still in the vehicle." (Doc. # 89 at 16:18–22,17:16-18). After observing Cain's vehicle on the tracker, Day then called Boone County Sheriff's Deputy Ryan King. (Doc. # 95 at 3). Day testified that he contacted King to "try to get the vehicle stopped," and that he "advised them that Mr. Cain's vehicle had just left a controlled buy and that they would need to find their own probable cause." (Doc. # 89 at 36:21–25). King testified

2

that Day would update him and his partner, Sergeant Hurst, with descriptions of the vehicle's locations and where it was heading. *Id.* at 54:2–23. King and Hurst then placed their vehicle on a center median of Kentucky Route 237 and Kentucky 20 and spotted Cain's vehicle at a nearby intersection. (Doc. # 95 at 4). After observing the vehicle make a left turn without using a turn signal, King and Hurst initiated a traffic stop. *Id.*

King and Hurst approached Cain's vehicle on either side, asking for driver's license and insurance, and King saw a "firearm in the passenger side of the vehicle." *Id.* King also observed "the odor of [burnt] marijuana coming from the inside of the vehicle." (Doc. # 89 at 57:6–58:11). Cain was asked to exit the vehicle, he complied, and Hurst ran the serial number of the firearm through dispatch, which revealed it was stolen. *Id.* at 58:16–19. Cain was handcuffed and read his Miranda rights, and then after being asked if the vehicle contained anything illegal, Cain stated that there was a box that could contain narcotics. (Doc. # 95 at 5). A drug dog arrived, sniffed around the vehicle, and alerted officers to the smell of narcotics. (Doc. # 89 at 107:1–23). The officers then searched Cain's vehicle and found drugs and cash. (Doc. # 95 at 5). A few months later, on February 14, 2019, a federal grand jury indicted Cain on five counts related to the discovery of methamphetamine, heroin, and fentanyl on the date of his arrest, as well as one count of possession of a firearm in furtherance of drug trafficking. (Doc. # 1).

On February 17, 2020, Defendant Cain filed a Motion to Suppress (Doc. # 59) all of the evidence seized upon his arrest, including statements given. He argues that evidence was seized in violation of his Fourth Amendment rights, as officers did not have a valid basis for the vehicle stop or for the prolonged seizure following the stop. *See* (Doc. # 59). After the United States filed its Response (Doc. # 65), Judge Smith held an

3

evidentiary hearing, (Doc. # 80), after which both Cain and the United States filed simultaneous post-hearing response briefs, (Docs. # 91 and 92). On May 14, 2020, Judge Smith issued her R&R (Doc. # 95), wherein she recommended that Defendant Cain's Motion to Suppress (Doc. # 59) be denied.

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." FED. R. CRIM. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections de novo and "accept, reject, or modify the recommendation." FED. R. CRIM. P. 59(b)(3). Failure to object to a Magistrate Judge's findings or conclusions results in waiver of those objections. FED. R. CRIM. P. 59(b)(2).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's recommendation must be "specific." FED. R. CRIM. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not

4

satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). Objections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are similarly improper. *United States v. Bowers*, No. 0:06-cv-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017); *United States v. Vanover*, No. 2:10-cr-14-DLB-REW, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017).

Defendant Cain raises three objections to the R&R. (Doc. # 96). First, Cain objects to Judge Smith's recommended finding that the officers had probable cause to stop and search Cain's vehicle based on the earlier controlled buy. (Doc. # 96 at 1–3). Second, Cain objects to Judge Smith's determination that probable cause existed to stop Cain's vehicle for a traffic violation. *Id.* at 3–4. Third, Cain objects to Judge Smith's conclusion that "reasonable suspicion" of criminal activity permitted a prolonged traffic stop. *Id.* at 4–6. The Court will address each of Defendant's objections.

### B. The controlled buy provided probable cause for the stop and search of Defendant's vehicle.

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. CONST. AMEND. IV. However, police are permitted to stop and search a vehicle "if they have 'probable cause to believe that the vehicle contains evidence of a crime,'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)), or in other words, a "fair probability" that the evidence is in the vehicle, *Lumpkin*, 159 F.3d at 986 (quoting *Smith v. Thornburg,* 136 F.3d 1070, 1074 (6th Cir.1998)). "The court's determination of whether probable cause existed at the time of

5

the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *Smith*, 510 F.3d at 647 (quoting *Smith*, 136 F.3d at 1074-75. Upon establishing probable cause, "the automobile exception permits police to stop and search a car without a warrant if they have probable cause to believe it contains contraband," and thus, "areas and containers where the contraband could be found" may be searched. *United States v. Arnold*, 442 F. App'x 207, 210 (6th Cir. 2011) (citing *Carroll v. United States*, 267 U.S. 132 (1925); *United States v. Ross*, 456 U.S. 798, 823 (1982)).

First, Cain argues that the confidential informant tip that Cain had "a large amount of other drugs" in his vehicle, *see* (Doc. # 95 at 3), was never corroborated, and notes that the cases that Judge Smith cites include corroboration. *See* (Doc. # 96 at 2). Cain mischaracterizes the investigation. "Probable cause may come from a confidential informant's tip, when sufficiently detailed and corroborated by the independent investigation of law enforcement officers." *United States v. Stokes*, 742 F. App'x 947, 950 (6th Cir. 2018) (quoting *Lumpkin*, 159 F.3d at 986). "'Substantial independent police corroboration' is not necessary when other hallmarks of reliability exist to a sufficient degree." *Id.* (citations omitted).

Upon informant giving officers a phone number of someone she knew as "Cain," who she had purchased methamphetamine from over the course of a year, officers performed an independent analysis to identify the number as belonging to Eric Cain, set up a controlled buy only after Cain called the informant, viewed the text messages between informant and Cain, placed electronic surveillance on the informant for the controlled buy, ensured informant had no drugs on her body before going into the controlled buy, placed their own GPS tracker on Cain's vehicle, and checked the

6

informant after the buy to confirm that she had received the drugs. *Id.* at 9:22–15:8, 16:18–22.

When the officers decided to initiate a stop and search of Cain's vehicle, other officers they had already appropriately found the informant's tip about the large amount of drugs reliable for the reasons previously stated. *See Stokes*, 742 F. App'x at 950–51 (citing *United States v. Hammond*, 351 F.3d 765, 773 (6th Cir. 2003); *United States v. Weaver*, 99 F.3d 1372, 1378 & n.4 (6th Cir. 1996)) (explaining that a history of reliability, a report of "personally seeing" a certain drug in a defendant's possession, and corroboration of other facts all increase the likelihood of finding probable cause). Here, Cain had also just sold drugs to the informant a short time earlier. Based on a totality of the circumstances, there was a "fair probability" that evidence of a crime would be located in Cain's vehicle, and thus police had probable cause to stop and search Cain's vehicle. *Lumpkin*, 159 F.3d at 986 (citations omitted) (defining probable cause); *see Arnold*, 442 F. App'x at 210–11 (finding probable cause when police corroborated initial tips, or details about defendant, arranged a controlled buy, and made observations of defendant showing up to the buy).

Cain also takes issue with Magistrate Judge Smith's characterization of the timeline of events, stating that Judge Smith erred by making it appear as if the controlled buy and the stop were contemporaneous, when they were approximately thirty minutes apart. (Doc. # 96 at 1–2). More specifically, Cain argues that the collective knowledge doctrine, which allows knowledge to be imputed across law enforcement agencies and among officers, as laid out in *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012), does not apply here, because if officers involved in the controlled buy had their own

7

probable cause, they would have immediately stopped Cain. (Doc. # 96 at 3). They also would not have told Hurst and King to "find their own probable cause." *Id.* (quoting Doc. # 89 at 36:23–25). Thus, Cain argues, King and Hurst could not rely on Day's knowledge to make the stop. (Doc. # 96 at 3). The Court disagrees.

"The collective knowledge doctrine is unaffected by an officer's use of a cover story to disguise a stop as a mere traffic stop." *Lyons*, 687 F.3d at 769 (citing *United States v. Williams*, 627 F.3d 247, 253 (7th Cir. 2010)). Day's direction to Hurst and King to find their own probable cause, is a "valid law enforcement tactic" to protect officers, confidential sources, and "the integrity of the DEA investigation." *United States v. Chavez*, 534 F.3d 1338, 1348 (10th Cir. 2008) (citing *United States v. Ramirez*, 473 F.3d 1026, 1038 (9th Cir.2007)). Therefore, Day's instruction does nothing to demonstrate his own lack of probable cause.[1]

Furthermore, as Cain cites to no authority to explain his assertion that officers must immediately act on probable cause, the Court cannot jump to the conclusion that any delay on Day and Kolkmeier's part is evidence that they lacked probable cause.[2] "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *See McPherson v. Kelsey*, 125 F.3d 989, 995–96

---

[1] Cain also argues Day did not have probable cause merely because when he called King, he said Cain was in a black Dodge Challenger or Charger. (Doc. # 96 at 1–2). Cain argues finding probable cause here would result in officers stopping *any* of those two types of vehicles. Day testified that he referred to it as a Challenger, (Doc. # 89 at 33:14–15), whereas King mentioned he heard "Charger or Challenger," (Doc. # 89 at 54:13–16). As Cain fails to articulate his legal reasoning as to why this would alter probable cause, the Court will not address this specific argument further.

[2] In general, courts look to objective fact in determining probable cause, rather than subjective intent, *United States v. Hughes*, 606 F.3d 311, 315 (6th Cir. 2010) ("[T]he permissibility of a traffic stop turns not on subjective intent, but rather on objective fact."), and thus Cain's speculation here is inappropriate.

8

(6th Cir. 1997) (citations omitted) (declining to address an argument and deeming it waived). Cain's objection to Judge Smith's finding that the controlled buy provided probable cause to stop and search the vehicle is **overruled**.[3]

### C. Probable cause existed to stop Cain for a traffic violation, and reasonable suspicion existed to prolong the stop.

Judge Smith stated that alternatively, if probable cause had not arisen from the controlled buy, the traffic violation provided probable cause to stop Cain, reasonable suspicion arose to prolong the stop, and eventually probable cause to search was developed. (Doc. # 95 at 10–11).

However, Cain argues Hurst and King's testimony about their location when they were observing the traffic violation is inconsistent, and therefore, probable cause did not arise from the turn signal violation. (Doc. # 96 at 4). Cain also argues that any alleged smell of marijuana smell does not provide reasonable suspicion. *Id.* at 4–6. However, Cain is simply restating the arguments he made before Judge Smith without addressing the reasoning Judge Smith put forth as to why he is incorrect. *Compare id.*, *with* (Doc. # 92 at 2–6). This is improper, as it fails to put the Court on notice of the issues. *Bowers*, 2017 WL 6606860, at *1; *Vanover*, 2017 WL 1356328, at *1. Additionally, several of these arguments fail to cite to any authority or offer more than a conclusory statement

---

[3] In a brief introductory sentence, Cain states that Judge Smith erred in finding the initial stop was "supported by reasonable and articulable suspicion." (Doc. # 96 at 1). Judge Smith briefly noted that reasonable suspicion, a lower standard than probable cause, also existed to *stop* the vehicle. (Doc. # 95 at 7). The Court agrees, and analysis on reasonable suspicion is unnecessary. *Arnold*, 442 F. App'x at 210. Cain discusses reasonable suspicion *after* the stop elsewhere in his briefing, and the Court will address that argument separately. Also, as a mere statement of disagreement is improper, *Bowers*, 2017 WL 6606860, at *1, this objection is **overruled**.

9

both in their presentation before Judge Smith as well as in the objections before the undersigned. The Court will not construct arguments, especially as Cain points to no error in Judge Smith's reasoning. See *McPherson*, 125 F.3d at 995–96 (finding barebones arguments waived).

Finally, Cain objects to Judge Smith's finding that officers did not unreasonably extend the time necessary to conduct a traffic stop because officers did not receive notice of the stolen firearm until 19 minutes had elapsed, and at that time, the stop had already been extended too long. (Doc. # 96 at 6). However, Judge Smith found the smell of marijuana created reasonable suspicion. (Doc. # 95 at 10–11). The Court agrees. Although officers may not extend an otherwise-completed traffic stop, absent reasonable suspicion, *Rodriguez v. United States*, 575 U.S. 348, (2015), King testified that he smelled marijuana shortly after approaching the vehicle and before completing the traffic stop (Doc. # 95 at 4–5); see *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (finding the smell of marijuana sufficient to allow search of a vehicle). More importantly, this argument is moot, as the Court has already found that officers had probable cause to stop and search the vehicle for contraband based on the earlier controlled buy, meaning they did not need additional reasonable suspicion. See *Arnold*, 442 F. App'x at 210 (describing the automobile exception). Therefore, the objection that probable cause did not exist to stop Cain for a traffic violation is **overruled**. Similarly, the objection that officers did not have reasonable suspicion to prolong the stop is also **overruled**.

10

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The Magistrate Judge's Report and Recommendation (Doc. # 95) is hereby **adopted**;

(2) Defendant Cain's Objections (Doc. # 96) to the Report and Recommendation are **overruled**;

(3) Defendant Cain's Motion to Suppress (Doc. # 59) is **denied**;

(4) The time period between the filing of the motion and this order, totaling 142 days, is excluded from the provisions of the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D); and

(5) This matter is scheduled for a **Scheduling Conference** on **Tuesday, July 14, 2020 at 11:30 a.m. in Covington**.

This 8th day of July, 2020.



Signed By:
*David L. Bunning*
**United States District Judge**

J:\DATA\ORDERS\Covington Criminal\2019\19-11 Order Adopting R&R.docx